PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RALPH ARNOLD, | ) | |
| | ) | CASE NO.  4:24CV0312 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| KYLE A. HAUSWIRTH, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |


*Pro Se* Plaintiff Ralph Arnold, an inmate in the Ohio State Penitentiary ("OSP"), filed the above-entitled action against Ohio Department of Rehabilitation & Correction ("ODRC") Regional Director Kyle A. Hauswirth, ODRC Program Administrator and Regional Director Karrie Hupka, OSP Unit Manager Joe Remish, OSP Case Manager Scott Nowak, OSP Warden Bryant Palmer,[1] and OSP Unit Manager Chief Reena Gordon.  Plaintiff is incarcerated at OSP under the ODRC's highest security level E, Extended Restricted Housing - Ineligible for Presumptive Release ("ERH-EN").  Inmates designated to ERH are provided with an extensive process prior to placement in this security level, and receive regular evaluations and reviews once they are in ERH.  Plaintiff indicates he is not contesting that ODRC policy itself, nor is he contesting his initial placement in ERH.  Instead, he claims that Defendants are not properly interpreting the policy pertaining to his regular reviews and evaluations.  Plaintiff contends this is

---

[1] Charmaine Bracy was an original Defendant.  She was sued in an official capacity as a public officer.  Bryant Palmer subsequently became the Warden at OSP. Pursuant to Fed. R. Civ. P. 25(d), Palmer's name has been automatically substituted as a party.

(4:24CV0312)

a denial of due process.  He seeks monetary damages, and release from ERH-EN to the general

population.

## I.  ODRC's Security Classification Policies and Procedures

All Ohio inmates are assigned a numerical security classification from level 1 through

level 4, with level 1 being the lowest security risk and level 4 being the highest.  Level 1 and

level 2 inmates are granted the greatest amount of privileges and autonomy.  In level 3, inmates

must be housed at a double fence facility and their movement is more restricted.  Level 3 is

designated for individuals who are likely to engage, or who have previously engaged, in

disruptive prison behavior requiring more control.  Level 4 is considered to be maximum

security.  Inmates at level 4 require enhanced supervision.  Their limited movements are

controlled and supervised.  Their cells must be securable, and they must be held in single cells

unless approved by the deputy director of prisons.  Inmates at level 4 have established histories of

violence and disruptive prison behavior.  They may also be given this classification if they

participate in acts that threaten the security of the institution.  These four levels are considered to

comprise the general population of the Ohio prison system.  *See* ODRC Policies & Procedures,

No. 53-CLS-01 (Security Classification for Incarcerated Persons (IPs) Levels 1 Through 4).

Prior to 2017, Ohio inmates could also receive a level 5 or super maximum-security

classification.  *See Wilkinson v. Austin*, 545 U.S. 209, 215 (2005).  Level 5 appears to have been

eliminated in February 2017 and replaced with the level E classification.  Level E inmates are

placed in ERH, which is the most restrictive security level and is reserved for incarcerated

individuals who cannot be managed safely in the general population.  ERH is not used for

(4:24CV0312)

punishment.  It is a security level classification reserved for those who exhibit such violent,

disruptive, predatory, riotous or other serious behaviors that they pose a serious threat to the

safety of other inmates, prison staff, and the general public.  Inmates may receive this

classification at reception when first entering the prison system or they may receive this

classification while serving their sentence in general population, if they meet both administrative

and behavioral criteria outlined in the policies and procedures, and only after a series of

procedural hurdles and appeals.  *See* ODRC Policies & Procedures, No. 53-CLS-04 (Level E

Placement (ERH)).

Specifically, the prisoner may be recommended for ERH placement by the Rules

Infraction Board ("RIB"), a member of the Unit Classification Committee, or an executive staff

member from the prison.  *See* ODRC Policies & Procedures, No. 53-CLS-04(VI)(E)(1).  A Level

E placement hearing is then conducted by a committee of at least 2 members.  *See* ODRC

Policies & Procedures, No. 53-CLS-04(VI)(E)(3).  The committee makes a recommendation that

is first served on the prisoner and then on the Warden.  The inmate has the right to appeal the

committee's recommendation to the Warden within 7 calendar days.  *See* ODRC Policies &

Procedures, No. 53-CLS-04(VI)(E)(6).  The Warden makes the final decision regarding

placement in ERH.  *See* ODRC Policies & Procedures, No. 53-CLS-04(VI)(F).  The Warden can

decide not to place the person in ERH and either leave the inmate in his current status, change his

security level, or recommend a lateral transfer.  *See* ODRC Policies & Procedures, No.

53-CLS-04(VI)(F)(2).  If the Warden determines ERH placement is warranted, she determines

the length of the placement as either 2 years or less or more than 24 months.  *See* ODRC Policies

3

(4:24CV0312)

& Procedures, No. 53-CLS-04(VI)(F)(4)..  Any placement for over 24 months requires the

approval of the deputy director of prisons.  *See* ODRC Policies & Procedures, No.

53-CLS-04(VI)(F)(5).

After placement in ERH, the inmate is given an Individual Adjustment Plan ("IAP") and

a presumptive release date, which must be set at two years or less, up to five years, up to 10 years

or for an indefinite length ("EN").  *See* ODRC Policies & Procedures, No. 53-CLS-04(VI)(G)(1)

and (2).  The presumptive release date is the maximum amount of time a person can spend in

ERH on the original placement.  *See* ODRC Policies & Procedures, No. 53-CLS-04(VI)(G)(3).  It

is uniquely tailored to the inmate and is derived after consideration of the inmate's behavior

before and after the ERH hearing, as well as the severity of the behavior that led to ERH

placement.  It cannot exceed the length indicated by the Warden on the initial ERH placement.

*See* ODRC Policies & Procedures, No. 53-CLS-04(VI)(F)(7) and (8).  All ERH inmates receive

weekly status reviews by their unit team and annual reviews by the full committee.  *See* ODRC

Policies & Procedures, No. 53-CLS-10(VI)(6)(A)(2) and (4) (Level E (ERH) Security Reviews).

Level E male inmates are primarily housed at the Southern Ohio Correctional Facility ("SOCF"),

OSP, and the Toledo Correctional Institution ("ToCI").  *See* ODRC Policies & Procedures, No.

53-CLS-04(V).

The ODRC revised its Level E (ERH) Security Reviews Policy No. 53-CLS-10 in

February 2020.  All inmates classified at ERH-EN at the time the new policy went into effect

were given an ERH review within 30 days for the purpose of providing them with a presumptive

release date.  An individual could still be kept in EN status if the managing officer determined

4

(4:24CV0312)

that the individual's current or past behavior was of the most egregious and dangerous nature that more than 10 years was required to determine that they could be safely managed in general population.  The reasons for continuing EN placement were required to be written and provided to the inmate and the regional director.  The regional director was given authority to approve or disapprove of the continued EN designation.  *See* ODRC Policies & Procedures, No. 53-CLS-10(VI)(B)(2); ECF No. No. 1-8 at PageID #: 129.  ERH-EN inmates continued to be provided with status and annual reviews of their ERH-EN designation.

If an inmate that is already at the ODRC's highest security level (ERH) commits another serious infraction that leads his security classification committee to believe he poses a continued threat to prison personnel and other inmates that will likely extend beyond the inmate's presumptive release date, the committee can recommend a new ERH placement.  The warden then determines the length of stay using the same criteria as he used for the original placement.  The new placement completely supersedes the prior ERH placement and begins on the date the infraction that triggered the new placement was committed.  *See* ODRC Policies & Procedures, No. 53-CLS-04(VI)(F)(7).  For example, if an inmate classified in ERH on April 1, 2022 with a presumptive release date of two years or less commits another serious infraction on January 1, 2024, and receives a new ERH placement with a presumptive release date of up to ten years, the up to ten year placement begins on January 1, 2024.  It does not begin on April 2, 2024 (when his first presumptive release date expires), nor does it begin on April 1, 2022, (when he was first placed in ERH).  *See* ODRC Policies & Procedures, No. 53-CLS-04(VI)(F)(7)..  His new placement completely takes the place of his prior placement and begins anew.

5

(4:24CV0312)

## II. Background

In 2000, Plaintiff was sentenced to life in prison without the possibility of parole for two counts of aggravated murder, one count of felonious assault, and one count of aggravated robbery in Cuyahoga County, Ohio Court of Common Pleas Case Nos. CR-99-378748-A and CR-99-380599-ZA. He was incarcerated initially in the general population at SOCF.

On February 16, 2009, Plaintiff murdered another SOCF inmate. Two inmates, Hall and Richards, were fighting on the top tier of the cell block range. During the fight, Hall stepped back to avoid Richards's punch and bumped into Plaintiff. Plaintiff picked up inmate Hall and threw him over the railing. Hall fell over 13 feet to the concrete floor below. He was life-flighted to OSU Hospital where he died as a result of blunt impact trauma to his head. *See* Summary of the Reason(s) for Placement ERH/EN Review (ECF No. 1-7). That incident led to an additional murder conviction in 2010, for which Plaintiff received a sentence of 15 years to life in prison in Scioto County, Ohio Court of Common Pleas Case No. 10CR000793. It also resulted in his initial placement at OSP as a level 5 super maximum-security prisoner in August 2009.

In 2014, while still at OSP classified as a level 5 super maximum-security prisoner, Plaintiff made or obtained a "shank" and stabbed a corrections officer in the neck in an attempt to cause his death. *See* Bureau of Classification's Decision Proposed ERH/SA Placement (ECF No. 1-6); ECF No. 1-7. The officer was preparing to escort Plaintiff from the inmate program area to his cell. The officer began to remove Plaintiff's handcuffs from their placement in front of his body to behind his back when Plaintiff turned and stabbed the officer in the neck. Two shanks

6

(4:24CV0312)

were recovered from the scene.  *See* ECF No. 1-3.  The officer was taken to St. Elizabeth's

Hospital where doctors informed him that the blade barely missed an artery.  The officer survived

the attack.  Plaintiff had made threats to assault and kill staff, so that others would not want to

work in his dorm.  *See* ECF No. 1-6.  Because Plaintiff was already at the ODRC's highest

security level, it is unclear whether the ODRC conducted an additional security level review

following this incident.

As stated above, in February 2017 the ODRC revised its security classification policies

and made the transition from the level 5 super maximum-security designation to the ERH

designation.  Plaintiff claims that at the time of this change he was classified as security level 4B,

which was still a super maximum-security classification.  That designation converted to an

ERH-1 security level.

In September 2017, Plaintiff was found to be in possession of another shank.  The RIB

found him guilty of the conduct violation and referred him for review of his security

classification.  *See* ECF No. 1-6.  ECF No. 1-6 is signed by ODRC Regional Director Hauswirth,

suggesting that this was not the first stage of security classification review.  The form indicates

that the Bureau of Classification considered Plaintiff's possession of a homemade weapon in the

context of his prior murder of an inmate in 2009 and his attempted murder of a staff member

with a shank in 2014, and concluded that given his behavioral history a weapon in his hands

presents a serious risk to security.  They indicated that the fact that Plaintiff was able to obtain

materials and make a shank while in ERH signified that his security level needed to be increased

to the fullest extent which is ERH-3.  The Bureau of Classification stated that Plaintiff "will

7

(4:24CV0312)

remain ineligible for presumptive reduction due to guilty findings on prior case of the rule 1

where he killed an inmate and rule 1 where he stabbed a Correctional Officer in the neck

attempting to cause his death."  ECF No. 1-6.

Because Plaintiff was classified as ERH-EN in February 2020 when ODRC Policies &

Procedures, No. 53-CLS-10 (Level E (ERH) Security Reviews) was revised, he was given an

immediate security review to determine whether he could be provided with a presumptive release

date within 10 years.  *See* Extended Restrictive Housing-Ineligible for Presumptive Release (EN)

Rationale (ECF No. 1-9).  The report generated by that review provided:

> In accordance with 53-CLS-10, an individual may be kept in EN status if the
> managing officer determines that the individual's current or past behavior is of the
> most egregious and dangerous nature that more than ten (10) years may be
> required to determine if they can be safely managed in general population.  The
> managing officer may not delegate this determination to any party.  If they
> determine EN status is warranted, they shall document the entirety of their
> reasoning in a written communication to the regional director.  The regional
> director shall review all requests for EN status and shall either approve or
> disapprove the recommendation.  A copy of the rationale, as well as the decision
> of the regional director, shall be provided to the incarcerated individual.
>
> The rationale used to determine that your current or past behavior is of the most
> egregious and dangerous nature that more than ten (10) years may be required to
> determine if you can be safely managed in general population is the following:
>     Causing the death of another, attempting to cause the death of a staff
> member, and continued misbehavior are all egregious rule violations.  Due to this
> act, you pose the greatest threat to the safety and security of a correctional facility
> and cannot be managed in the general population.

ECF No. 1-9 at PageID #: 134.  The report indicated that Plaintiff's security level review will be

held on his anniversary date in compliance with ODRC Policies & Procedures, No. 53-CLS-10.

It also stated that he would be given meaningful consideration for release at his review based on

his compliance with his IAP, if it could reasonably be concluded that he could be managed in a

(4:24CV0312)

less restrictive environment. Finally, the report stated that based on all of the factors listed, the

Warden recommended on February 27, 2020 that Plaintiff be retained in ERH-EN security status.

The ODRC Regional Director approved Plaintiff's ERH-EN placement on March 3, 2020.

Plaintiff was informed of his right to appeal the decision to the Deputy Director of Prisons and

was provided with appeal forms on March 11, 2020. *See* ECF No. 1-9 at PageID #: 134.

Plaintiff claims he was denied due process at this February 2020 security review. First,

Plaintiff indicates that when he was sent to OSP in 2009, he was told that he could be held at a

5B security classification for up to 10 years. *See* Notice of E Review Appeal to OSC (ECF No.

1-11) at PageID #: 142. Plaintiff states that at the time of the 2020 hearing, he had been held in

ERH at OSP for 11 years. Plaintiff claims that he should have been released at that hearing,

rather than continued at ERH-EN. *See* Complaint (ECF No. 1) at PageID #: 52.

Second, Plaintiff claims Defendants denied him due process when they "stacked" his

prior offenses in violation of ODRC Policies & Procedures, No. 53-CLS-04. *See* ECF No. 1 at

PageID #: 37-45. This claim has several components. He refers to ODRC Policies &

Procedures, No. 53-CLS-04(F)(7), which states:

> If the person is already in ERH when a new placement is recommended by the
> committee, the managing officer/designee shall make a length of stay
> determination using the same rules as noted previously, but this shall not be
> consecutive to the previous placement.
>
> Example: A person is currently in Level E serving up to two (2) years. The person
> then seriously assaults a staff member. The managing officer orders a new
> Security Review hearing and places the person in Level E for up to five (5) years.
> The up to five (5) years is now the commanding record and the previous
> placement is closed. They do not get stacked on top of each other.

9

(4:24CV0312)

As these are security level classifications and not disciplinary sanctions (which may be imposed separately), there can be only one classification in effect at a time. Plaintiff then refers to his 2017 Bureau of Classification's Decision (ECF No. 1-6) that was prompted by the discovery of another shank in Plaintiff's possession. This form indicated that Plaintiff "will remain ineligible for presumptive reduction" due to his prior murder of an inmate and his attempted murder of a corrections officer. ECF No. 1-6. Plaintiff focuses on the next sentences on the preprinted form that state: "You have been credited for all time served in ERH/SA therefore your effective placement is:  Sept 1, 2017 . While pending transfer to an ERH/SA unit you are expected to comply with your IAP. Failure to do so may lengthen the time you remain in ERH/SA." ECF No. 1-6. Those sentences, however, refer to inmates who were placed in level E security from general population and are awaiting transfer to an ERH facility. It informs them that the ODRC considers them to be placed in ERH from the moment they were placed under level E security conditions, and not necessarily when they were transferred to a more permanent ERH facility. They are therefore "credited" with the time they spend in restricted housing (segregation) pending transfer to an ERH facility. For inmates like Plaintiff who were already in ERH when they committed another serious infraction to prompt review of their security status, the effective date of the placement is the date they committed the new offense. In Plaintiff's case this was September 1, 2017, the date he was found to be in possession of another shank. Plaintiff, however, reads this sentence to mean that the ODRC absolved him of his 2009 murder and 2014 attempted murder violations and those offenses can no longer be considered in his security classification reviews. *See* ECF No. 1 at PageID #: 39-40. He contends the ODRC's

10

(4:24CV0312)

reference to these events in his 2020 security review constitutes "stacking" offenses, is a violation of ODRC Policies & Procedures, No. 53-CLS-04, and is a denial of due process.

Third, Plaintiff contends that his 2014 stabbing of a corrections officer cannot be considered in his security reviews.  *See* ECF No. 1 at PageID #: 27.  He contends his security classification was not reviewed after this incident, possibly because he was already at the highest security level in the ODRC at that time.  Plaintiff reasons that, because he did not have a security classification review at that time, the committee cannot consider this stabbing of a corrections officer when it reviews his current security classification.

Plaintiff does not specifically object to his 2021 and 2022 security reviews.  Plaintiff, however, claims he was denied due process at his 2023 security classification review.  He contends that his classification review committee consisted of three members – OSP Unit Manager Remish, OSP Case Manager Nowak, and Corrections Officer Johnson.  Plaintiff alleges that when the committee members went to deliberate, Johnson did not accompany Remish and Nowak, but went to a separate area.  *See* ECF No. 1 at PageID #: 73.  He claims Remish and Nowak reached a decision without Johnson's input.  Plaintiff asserts that this denied him due process.  Plaintiff indicates he appealed the decision of his security status citing Johnson's absence from the deliberations.  He claims ODRC's policy provides him with seven days to appeal a decision regarding his security status.  Plaintiff contends that although he filed an appeal and served all interested parties, OSP Unit Manager Chief Gordon issued the decision continuing his ERH-EN status without waiting for a decision to be made on his appeal.  *See* ECF No. 1 at PageID #: 29.

11

(4:24CV0312)

Finally, Plaintiff asserts an Eighth Amendment claim.  He contends that ODRC officials violate the Eighth Amendment when they deprive inmates of procedural due process at disciplinary hearings.  *See* ECF No. 1 at PageID #: 72.  Plaintiff contends Defendants denied him due process and therefore violated his rights under the Eighth Amendment.

### III.  Standard for Dismissal

A district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the Court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000); *see also Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); *In re Bendectin Litig.*, 857 F.2d 290, 300 (6th Cir. 1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true.  *Twombly*, 550 U.S. at 555.  The plaintiff is not required to include detailed factual allegations,

12

(4:24CV0312)

but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Iqbal*, 556 U.S. at 678.  A pleading that offers legal conclusions or a simple recitation of the

elements of a cause of action will not meet this pleading standard.  *Id.*  In reviewing a complaint,

the court must construe the pleading in the light most favorable to the plaintiff.  *Bibbo v. Dean*

*Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

### IV.  Law and Analysis

Generally, a prisoner has no constitutional right to be incarcerated in a particular prison or

to be held under a specific security classification.  *Olim v. Wakinekona*, 461 U.S. 238, 245

(1983).  This means that security increases between levels 1, 2, 3, and 4 do not implicate the Due

Process Clause, even if they result in the inmate's transfer to a more secure institution within the

general prison population.  The Due Process Clause is triggered only if the security level increase

results in a prison placement that imposes an "atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The Supreme Court of the United States clarified that an inmate's transfer from general

population to a super maximum-security prison (security level 5 aka level E) triggers due process

protections based on the highly restrictive conditions in the super maximum-security prison, and

the indefinite period of time for which inmates may be housed in that level E facility.  *Wilkinson*,

545 U.S. at 223 (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an

atypical and significant hardship").  That merely means that the State of Ohio must offer

procedural protections that weigh the inmate's interest in avoiding the placement with the

government's interest in protecting other inmates and prison staff, and ensure against erroneous

13

(4:24CV0312)

deprivation of the inmate's liberty interest. *Id.* at 224-25 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  The Supreme Court then went on to determine that Ohio's policy for placing inmates in a super maximum-security facility was sufficient to satisfy the requirements of due process.  *Id.* at 215-18.

Plaintiff is not challenging the sufficiency of the process itself or his initial placement at OSP.  Instead, Plaintiff is contesting the manner in which ODRC employees interpret and apply the ODRC policy governing the manner in which regular security level reviews are conducted for level E prisoners.  The policy itself, however, is not given due process protection.  Instead, it is one means of providing due process protections.  Plaintiff does not have a due process right to a specific classification review policy.  *See Jackson v. Hamlin*, 61 Fed.Appx. 131, 132 (6th Cir. 2003) ("The state simply has no 'federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable.' ") (quoting *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993)).  The question therefore is not whether the ODRC is perfectly following its policies, but whether Plaintiff was provided with due process.

"Procedural due process at its core requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (citations and internal quotation marks omitted).  Plaintiff does not dispute that he received due process prior to his placement in ERH in 2009.  He appears to have had annual security reviews.  Plaintiff has received notice of those reviews.  He also received written decisions to continue his security level at ERH-EN.  Those decisions are supported by facts on

14

(4:24CV0312)

which ODRC personnel relied to make that determination.  Plaintiff was provided the

opportunity to appeal those decisions.  Although he contends the 2023 security classification

review decision was already made while his appeal was pending, there is no suggestion that if his

arguments were deemed to have merit, the decision would not have been overturned.  The

Complaint (ECF No. 1) contains no indication that Plaintiff was denied due process.

Finally, Plaintiff asserts that Defendants violated his Eighth Amendment rights by

denying him due process in disciplinary proceedings.  Plaintiff does not explain this claim.  He

does not mention any particular disciplinary proceedings or why he believes they violated his

Eighth Amendment rights.  This claim is stated solely as a legal conclusion.  Legal conclusions

are not sufficient to state a claim for relief.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

## V.  Conclusion

For the foregoing reasons, the case at bar is dismissed in accordance with 28 U.S.C.

§ 1915A.  In light of this dismissal, Plaintiff's Motion for Appointment of Counsel is denied as

moot.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision

could not be taken in good faith.


IT IS SO ORDERED.


____June 5, 2024____                                    _/s/ Benita Y. Pearson_____
Date                                                               Benita Y. Pearson
                                                                    United States District Judge


15